UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL FLORES,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br><br>            Defendant.<br>_____ / | CASE NO. 1:10-cv-00919-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Israel Flores, proceeding *in forma pauperis*, by his attorneys, Law Office of Henry Reynolds, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income  ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.  Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court denies Plaintiff's appeal.

I.      **Administrative Record**

   A.      **Procedural History**

On October 17, 2006, Plaintiff filed a SSI application, alleging disability beginning October 1, 1990.  His claims were denied initially and upon reconsideration.  On June 18, 2007,

Plaintiff filed a timely request for a hearing.  Plaintiff appeared and testified at the hearing on May 14, 2008.  On September 25, 2008, Administrative Law Judge William C. Thompson, Jr., denied Plaintiff's application.   The Appeals Council denied review on April 20, 2010.  On May 19, 2010, Plaintiff filed a complaint seeking this Court's review.

### B.     Factual Record

Beginning in fourth grade, Plaintiff (born October 17, 1988) attended special education classes.  He had received early intervention services since he was three years old.  After entering high school, Plaintiff's excessive absences led to his assignment to an alternative school intended to increase Plaintiff's attendance and social skills.  Nonetheless, Plaintiff dropped out of school without completing the eleventh grade.  Plaintiff's mother testified that he had been diagnosed with ADHD and often became impatient, angry, or frustrated.

Plaintiff testified that he could not work because he was anxious around other people.  Similarly, although he had friends, anxiety prevented him from going to the movies or other activities with them.  He did not think he could clean offices or work at McDonald's since he would have to do that in the presence of others.

Plaintiff did not drive but was able to walk five or six miles.  He had no trouble standing for a couple of hours without sitting down.  He thought his ability to lift was unlimited.

Plaintiff vacuumed his home according to his mother's directions but did not think he was good at cleaning.  He testified that he could read but that math was too hard.  His mother testified that, although Plaintiff pretended to read the newspaper, he did not seem to understand it and could not talk about what he claimed to have read.

In his adult function report, Plaintiff reported that on a typical day, he woke up and washed, then ate and watched television at home or at a friend's home.  He did not cook or shop.  His household chores were throwing out the garbage, vacuuming, and mowing the lawn.  Plaintiff reported that he could count change but had not learned to perform other financial tasks.

**Mother's testimony.**  Plaintiff's mother testified that Plaintiff tended to have friends who took advantage of him.  He had previously fallen in with a bad crowd, getting in legal trouble and

///

using cigarettes, alcohol, and drugs.  Plaintiff also liked to socialize with much younger children of approximately twelve or thirteen years.

In a third party disability report, Plaintiff's mother reported that he needed encouragement to do his chores and sometimes needed help in performing them.  She felt that Plaintiff was not capable of learning to drive or to perform financial tasks other than counting change.

**Unintelligible speech.**  Both the ALJ and Plaintiff's attorney had difficulty understanding Plaintiff's speech at the hearing.  Plaintiff mother testified that, although he had received speech therapy as a child, he continued to speak too quickly and confuse the word sounds.  Consequently, he was often difficult to understand.

**School records.**  In March 1999, school psychologist Greg Bird conducted a three-year psycho-educational evaluation to determine Plaintiff's (1) continuing need for special education; (2) least restrictive environment; (3) responsiveness to appropriate interventions; and (4) processing deficit and handicapping condition.  On the WISC-III, Plaintiff received a verbal IQ score of 59, and a performance IQ score of 62, yielding a full scale IQ of 56 (below the first percentile).  Bird diagnosed Plaintiff as mildly mentally retarded.

Bird reported that Plaintiff had an inadequate verbal knowledge base that restricted his development of oral and written language skills, reasoning, problem solving, and thought processes.  He had very poor ability to recognize and organize complex nonverbal relations between the simple elements of a problem.  His rate of information processing was slow, possibly as a result of difficulties in visual tracking and short-term memory.  His communication abilities were deficient.

In September 2006, school psychologist William M. O'Brien, Ph.D., referred Plaintiff for evaluation by Valley Mountain Regional Center (VMRC) to determine his suitability for adult programming.  On August 26, 2007, O'Brien opined that Plaintiff's functional abilities were poor in nearly all areas except for fair ability to interact with supervisors and to understand, remember, and carry out simple job instructions.

O'Brien appended Plaintiff's school records.  Plaintiff's 2006 individualized education program (IEP) reflected that Plaintiff had an unspecified specific learning disability (SLD) and

required additional instructional support due to processing errors and memory delays.  An individualized transition plan noted that Plaintiff would like to work at Wendy's after completing school.  The year's objectives included to learn how to do a job interview and how to figure out pay and banking; to explore various job options; and to attend school daily.

**VMRC.**  In an August 2003 psychological report, educational psychologist Richard Burgess, Ph.D., reported on his psycho-educational evaluation to determine Plaintiff's eligibility for services from Valley Mountain Regional Center (VMRC).  Burgess opined that Plaintiff had worked as well as possible on all presented test items, suggesting that the test results were a valid measure of his functioning level.  On the WISC-III, Plaintiff scored a verbal IQ of 58, a performance IQ of 53, and a full scale IQ of 52, indicating performance at the .086 percentile, or in the mentally deficient range.  Burgess opined that Plaintiff "will find it difficult to function at a level comparable to that of others his age for most life activities."  AR237.

In Fall 2003, Valley Mountain Regional Center (VMRC) determined that Plaintiff was not eligible for regional center services for people with developmental disabilities, finding that Plaintiff's behavioral and academic concerns related to psychiatric and expressive language difficulties, not to mental retardation or any similar impairment eligible for VMRC services.  Communication skills were the area of Plaintiff's greatest relative deficit, reflecting both stuttering and word retrieval problems.  Psychologist Arnold E. Herrera, Ph.D., suggested that, although Plaintiff's intellectual capacities were in the borderline to low average range, the inconsistent results of Plaintiff's intelligence and achievements tests reflected the combination of his learning dysfunction (auditory processing) and his inattention.  Plaintiff also demonstrated borderline social skills, characterized by restiveness, defying authority, impatience, low frustration tolerance, easy anger, disruptiveness, fighting, truancy, and school suspension. Herrera diagnosed:

| Axis I | (314.9) | Attention Deficit Disorder, NOS |
| | (313.81) | Oppositional Defiant Disorder with features of Conduct Disorder |
| | (315.9) | Learning Disorder, NOS, with auditory processing deficits |
| | (315.31) | Expressive Language Disorder |

|   |   |   |
|---|---|---|
| Axis II | (V71.09) | No diagnosis; retains at least low average intelligence, correcting for inattention and auditory processing deficits |
| Axis III |  | No known conditions |

AR 234.

**Agency consulting psychologist.** On December 14, 2006, clinical psychologist Philip M. Cushman, Ph.D., evaluated Plaintiff on behalf of the agency. Cushman noted that Plaintiff was taking no medication. He expressed himself more slowly than normal, using short phrases. He was cooperative and agreeable, and only mildly anxious.

Plaintiff's results on the WAIS-III, indicated verbal IQ of 69, performance IQ of 67, and full scale IQ of 74. Although Plaintiff had no specific learning disability, he had few cognitive problem solving skills. His results on Trails A indicated mildly impaired functioning due to slowness; his slowness and errors on Trails B indicated severely impaired functioning. He read at a sixth grade level, comprehended sentences at a second grade level, spelled at the fifth grade level, and demonstrated math computational skills at the fourth grade level. Cushman diagnosed:

|   |   |   |
|---|---|---|
| Axis I | 315.00 | Reading Disorder (premorbid) |
|  | 315.31 | Expressive Language Disorder |
| Axis II | V62.89 | Borderline Intellectual Functioning |
| Axis III |  | No diagnosis |
| Axis IV |  | Psychosocial stressors: History of special education, history of speech therapy, currently in special education class in the twelfth grade at age 18, unemployment, living with family |
| Axis V |  | GAF 55 |

AR 200.[1]

///

---

[1] The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR"). It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." *Id*. at 34. The first description in the range indicates symptom severity; the second, level of functioning. *Id*. at 32. In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. *Id*. at 33.
    GAF 55 is in the middle of the range GAF 51-60, which indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attack) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*. at 34.

Cushman summarized:

> As a result of the above diagnoses, [Plaintiff] is not capable of performing any detailed or complex tasks in a vocational setting. He is capable of performing some simple and repetitive tasks. He does appear capable of regularly attending and consistently participating, but has little experience with such routine in his life. He may have difficulties working a normal workday, as he has no experience doing so, but most likely could work up to such a level, assuming he was so motivated. Special or additional supervision is needed in addressing some of his limited language skills. He does appear capable of following simple verbal instructions from supervisors, but not complex instructions. He does appear capable of getting along with supervisors, coworkers, and the general public. He may need some assistance in dealing with the usual stressors encountered in a competitive work environment due to his limited language skills.

AR 200.

**Dr. O'Malley.** On January 23, 2007, E. P. O'Malley, a state agency psychiatrist, reviewed Plaintiff's records and determined that Plaintiff was impaired by borderline intelligence. O'Malley opined that Plaintiff had no significant limitations except for his ability to carry our detailed instructions. He opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.

**Competency evaluation.** On March 22, 2007, Philip S. Trompetter, Ph.D., evaluated Plaintiff's competency to assist in his own defense in a criminal prosecution for auto theft. Plaintiff had a criminal record, having previously been arrested for assault and disorderly conduct.

After administering a mental status examination and psychometric testing, Trompetter opined that Plaintiff had the capacity to understand the proceedings against him and to assist counsel in his own defense so long as his defense attorney explained legal alternatives to him slowly and carefully. Trompetter found no evidence of a thought disorder. Plaintiff's speech and memory were normal except for Plaintiff's lifetime stutter. In light of Plaintiff's diminished cognitive functioning (verbal IQ of 68), Trompetter diagnosed mild mental retardation or borderline intellectual functioning. He also diagnosed alcohol abuse. Trompetter observed, "He might be 18 years old chronologically, but he is not 18 years old developmentally." AR 220.

///

**Dr. Fromuth.**  At the request of Plaintiff and his mother, pediatrician Robert Fromuth, M.D., completed a form for county job placement services on April 18, 2007.  Fromuth opined that Plaintiff could work full time in a supervised or sheltered environment.  On July 7, 2007, Fromuth declined to complete disability forms for Plaintiff, explaining that he had only seen Plaintiff twice.  He added that his only knowledge of Plaintiff's intellectual disability was information conveyed to him by Plaintiff's mother.

**Dr. Carfagni.**  On June 1, 2007, state agency psychiatrist Arthur Carfagni, M.D., reviewed Plaintiff's records and opined that Plaintiff was limited to simple repetitive tasks.

**Dr. Lee.**  Jungjin Lee, M.D., primary care physician for Plaintiff's parents, examined Plaintiff on July 6, 2007.  Plaintiff's mother advised Lee that Plaintiff was applying for SSI based on his mild mental retardation.  Lee observed that Plaintiff, who was alert and well oriented, was able to answer questions appropriately in simple, short sentences and to follow simple commands in the course of the physical examination.  Lee encourage Plaintiff to seek job training rather than SSI.

**Dr. Se.**  In March 2008, John Terence Se, M.D., opined that Plaintiff had mild mental retardation and could work full- or part-time with full and constant supervision.

**Mr. Ruiz.**  On April 22, 2008, behavioral health consultant Lawrence Ruiz, LCSW, evaluated Plaintiff, noting that VMRC had twice refused Plaintiff services.  He referred Plaintiff to Cynthia Hunt, M.D.  On May 2, 2008, Ruiz opined that Plaintiff had poor abilities in most mental functional areas.

**Dr. Hunt.**  On May 16, 2008, Hunt diagnosed Plaintiff as demonstrating mood disorder NOS, intermittent explosive disorder, and post traumatic stress syndrome/ rule out obsessive compulsive disorder.  She opined that Plaintiff had poor functional abilities in most areas, with fair ability to maintain his personal appearance and no ability to understand, remember, and carry out complex job instructions.  Hunt opined that Plaintiff had moderate restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and marked episodes of decompensation, each of

///

extended duration.  She estimated that Plaintiff was likely to miss work more than four times per month.

**Vocational expert.**  Tom Reed testified as the vocational expert.  For the first hypothetical question, the ALJ directed Reed to assume a nineteen-year-old individual educated to the eleventh grade who is functionally illiterate and has no exertional limits but is mentally limited to work involving simple instructions and requires relatively restricted contact with the public and co-workers.  The hypothetical individual could work in the presence of others but could not be part of a work team or a cooperative process.  Reed opined that the individual could work as a dishwasher (light work; SVP 2), 9,792 positions in California; dry cleaning worker (light work; SVP2), 3,871 positions in California; agricultural produce sorter (light, SVP 2)., 3,895 positions in California; janitor or building cleaner (medium, SVP 2), 26,026 positions in California.

For the second hypothetical question, the ALJ first defined "poor" as "the ability to function in the area is seriously limited but not precluded," and "none" as having no useful ability.  He then directed Reed to assume that the individual was rated as poor in the ability to follow work rules; poor in the ability to relate to co-workers; poor in the ability to deal with the public; poor in the ability to function independently; poor in the ability to maintain attention and concentration; poor in the ability to understand, remember and carry out detailed but not complex job instructions; and fair in the ability to carry out and remember simple job instructions.  Reed opined that the cumulative effect of so many limitations would make it extremely difficult for the hypothetical individual to maintain any employment.

Plaintiff's attorney then directed Reed's attention to Ruiz's opinion that Plaintiff rated poor on following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, and maintaining attention and concentration.  Ruiz rated Plaintiff as fair in behaving in an emotionally stable manner, relating predictably in social situations and demonstrating reliability.  Reed opined that the cumulative effect of such limitations would make it extremely difficult for a person to work outside of a sheltered environment.

## II. **Discussion**

### A. **Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of October 17, 2006. His only severe impairment was borderline intellectual functioning, which did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926) Plaintiff had no past

relevant work.  The ALJ concluded that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels provided that it involve simple instructions and relatively restricted contact with the public and co-workers.  The ALJ defined restricted contact to mean that Plaintiff could work in the presence of others but could not be part of a work team or a cooperative work process.

### B.	Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### C.	Credibility

Plaintiff's appeal consists of his challenging the ALJ's determinations of his own credibility, that of his mother, and of school psychologist O'Brien, whom Plaintiff contends should have been evaluated as a treating physician.  Plaintiff's objective appears to be establishing the existence of an additional and work related limitation of function that will qualify him for disability benefits under 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05C.

"[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and*

*Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Having reviewed the record and applicable law, this Court concludes that, regardless of whether other conclusions might have been drawn from the evidence, the ALJ's conclusions were supported by substantial evidence.

### 1. Dr. O'Brien's Opinion

School psychologists qualify as acceptable medical sources "for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only." 20 C.F.R. § 404.1513(d)(2). Medical reports from acceptable sources should include (1) medical history; (2) clinical findings (such as the results of mental status examinations); (3) laboratory findings; (4) diagnosis (a statement of the disease or injury based on its signs and symptoms); (5) treatment prescribed with response and prognosis; and a statement of what the claimant remains able to due despite his or her impairments. The Commissioner may also consider evidence from educational personnel, including school teachers and counselors, about the severity of the claimant's impairment and its affect on the claimant's ability to work. 20 C.F.R. § 404.1513(a)(2). Accordingly, the regulations contemplate the provision of evidence by a school psychologist such as O'Brien.

Plaintiff contends that the ALJ should have treated O'Brien as his treating physician. Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* The Social Security Administration favors the opinion of a treating

physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631. A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ discounted O'Brien's opinion:

> I have considered the opinion of claimant's school psychologist, William O'Bri[e]n, who noted that the claimant appears to be having increasing problems relating to others and with nonverbal behaviors when communicating. The claimant also has low attendance at school. There is no indication that this doctor examined the claimant, and most of the abnormalities noted were reported by the claimant's mother, who is seeking ongoing services for her son. I am not convinced that this assessment is outside the residual functional capacity I assigned. Although the school psychologist later wrote that the claimant would have a poor ability to function in almost all areas, this is not supported by the claimant's individual education plan, his psychological testing, his academic records, his activities of daily living, or his treatment records. Thus, I give little weight to this opinion.

AR 17.

The ALJ also analyzed the numerous treating and examining opinions included within the agency record.

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); Social Security Ruling 96-5p. The regulations provide that medical opinions be evaluated by considering (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 28 C.F.R. § 404.1527(d).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory

opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. Even though the treating physician's opinion is generally given greater weight, when it is contradicted by an examining physician's opinion that is supported by different clinical findings the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. Without specific and legitimate reasons to reject the opinion, the ALJ must defer to the treating or examining professional. *Lester*, 81 F.3d at 830-31. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.

Although an ALJ is not bound by opinions rendered by a plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A general statement that objective factors or the record as a whole are insufficient: the ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ did so here, carefully considering the opinions offered by multiple psychologists and psychiatrist who examined Plaintiff. He properly observed that O'Brien, despite a long-term school counseling role for Plaintiff before Plaintiff's truancy resulted in his transfer to an alternative school, neither tested Plaintiff nor provided continuing treatment of Plaintiff's intellectual disability and behavioral issues.

Although O'Brien did not treat in the sense typically observed in a disability case, he did have frequent opportunities to know and observe Plaintiff within the school setting. He did not appear to conduct any educational or psychological testing, nor were records of his meetings with Plaintiff included in the agency record. Notwithstanding O'Brien's assessment that Plaintiff's functional abilities were generally poor, he opined, as did nearly all professionals who treated or

examined Plaintiff, that Plaintiff had fair ability to interact with supervisors and to understand, remember, and carry out simple job instructions.

Most notably, as the ALJ observed, Plaintiff's IEP contemplated that Plaintiff was capable of working and provided that Plaintiff's twelfth grade program would include specific preparation for interviewing for jobs and functioning in a work place. Even if the ALJ had given O'Brien's opinion more weight, his determination could reasonably have been the same.

When the evidence could be interpreted in more than one way, the Court should uphold the ALJ's determination if it is supported by substantial evidence. *Thomas*, 278 F.3d at 954; *Magallanes*, 881 F.2d at 751. Substantial evidence supported the ALJ's determination here.

### 2. **Plaintiff's Credibility**

In his first point on appeal, Plaintiff contends that the ALJ failed to recognize the credibility of Plaintiff's claims. An ALJ is not required to believe every allegation of a non-exertional requirement. *Orn*, 495 F.3d at 635. But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney*, 846 F.2d at 584. *See also Robbins*, 466 F.3d at 885. The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039, *citing Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

The ALJ found that, although Plaintiff's medically determinable impairment could reasonably produce some of Plaintiff's symptoms, both Plaintiff and his mother exaggerated the intensity, persistence and limiting effects of his disability. With regard to Plaintiff, said the ALJ, the medical record did not support Plaintiff's claim that he required help with his everyday duties.

The ALJ noted that Plaintiff's IEP did not mention that Plaintiff was unable to perform basic skills or that he had difficulty paying attention. What the IEP did emphasize was Plaintiff's truancy. Plaintiff offered no explanation of his repeated failure to attend school. In fact, he ignored it, testifying to his daily routine of waking and going to school on school days.

///

///

The ALJ then proceeded to examine the medical and psychological opinions set forth in the record, drawing together various sources of evidence relevant to Plaintiff's claims and concluding that Plaintiff's claim that he was unable to work was not credible.

The Court agrees. Substantial evidence supported the ALJ's conclusion. The medical and psychological materials in the record consistently identified Plaintiff as having borderline intelligence, but did not suggest that he was incapable of working. To the contrary, nearly every medical and psychological opinion in the record indicated that Plaintiff was able to work as long as he was not required to follow lengthy or complex instructions. His most recent IEPs contemplated that Plaintiff would eventually hold a job in that they addressed Plaintiff's transition from school to work, and included as objectives encouraging Plaintiff to explore possible job choices, preparing him to interview, and teaching him behaviors appropriate to the working world. Plaintiff told school personnel that he might like to work at Wendy's or as a forklift driver.

Plaintiff was able to perform adequate personal care and to dress himself. He liked to watch television, at home and at the homes of friends. He rode his bicycle, sometimes for fair distances, navigating the area competently. He was capable of walking for miles. At home, Plaintiff vacuumed the house, mowed the lawn, and took out the garbage. Although Plaintiff disliked math, he was able to count change. In short, the ALJ's conclusion that Plaintiff was capable of work was supported by substantial evidence. The ALJ properly discounted Plaintiff's credibility.

### 3. Lay Witness's Credibility

Plaintiff contends that the ALJ also rejected the testimony of Plaintiff's mother without offering adequate justification. In particular, Plaintiff contends that the ALJ should have credited his mother's testimony regarding his fear of leaving the house; his ADHD, anxiety, and depression; his need to be reminded to care for personal hygiene; and his difficulty in following simple instructions.

Although the ALJ noted Mrs. Flores's testimony regarding Plaintiff's interpersonal relationships and activities of daily living, he rejected her testimony that Plaintiff was diagnosed

with ADHD as unsupported by the medical evidence in the record. The ALJ properly disregarded this attempt to introduce medical evidence through a lay witness.

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless he ultimately determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), *quoting Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Friends and family members who are in a position to observe the claimant's symptoms and daily activities are competent to testify about their observations of the claimant's condition. *Dodrill*, 12 F.3d at 918-19. An ALJ's disregard of the testimony of friends and family members violates the regulations, which provide for consideration of the observations of non-medical sources regarding the effects of the claimant's impairments on his ability to work. *Id., citing* 20 C.F.R. § 404.1513(e)(2).[2] *See also Sprague*, 812 F.2d at 1232. When a claimant alleges symptoms that are not supported by medical evidence in the record, the agency directs the adjudicator to obtain information about those symptoms from third parties likely to have such knowledge. SSR 88-13. The ALJ must give "full consideration" to such testimony. *Id.*

No medical evidence supported Mrs. Flores' testimony that Plaintiff suffered from anxiety and ADHD. Testimony of a third party witness cannot establish the existence of a medically determinable impairment. SSR 2006-03. Evidence of a medical impairment must come from an acceptable medical source, such as a physician or psychologist. *Id. See* 20 C.F.R. § 416.913(d). Accordingly, the ALJ properly considered the testimony of Plaintiff's mother regarding Plaintiff's symptoms and activities of daily life and properly rejected testimony regarding diagnoses such as ADHD, anxiety, and depression, that were not supported by medical evidence in the record.

### III.   **Conclusion and Order**

The Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.

---

[2] The relevant section is now designated 20 C.F.R. § 1513 (d)(4).

Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:   September 22, 2011**             /s/ Sandra M. Snyder
                                                                    UNITED STATES MAGISTRATE JUDGE